**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FACEBOOK, INC., IPO SECURITIES AND DERIVATIVE LITIGATION | MDL No. 12-2389<br><br>ECF Case |
| ROBERT LOWINGER,<br><br>     *Plaintiff*,<br><br>  v.<br><br>MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN, SACHS & CO., and FACEBOOK, INC.,<br><br>     *Defendants*. | This document relates to:<br>  13 Civ. 4016 |

**LEAD UNDERWRITERS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR RECONSIDERATION OR REARGUMENT**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

*Attorneys for Defendants Morgan Stanley*
*& Co. LLC, J.P. Morgan Securities LLC and*
*Goldman, Sachs & Co.*

# TABLE OF CONTENTS

PAGE

ARGUMENT ........................................................................................................... 1

    A.    The Opinion Did Not Overlook Any Allegations as to the Lead
        Underwriters ......................................................................................... 2

    B.    The Opinion Did Not Overlook Any Allegations as to Goldman
        Sachs .................................................................................................... 5

    C.    The Opinion Contains No Clear Error of Law.................................... 6

    D.    There Is No Basis for Leave to Amend .............................................. 8

CONCLUSION ....................................................................................................... 9

# TABLE OF AUTHORITIES

PAGE

### CASES

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012)............................2, 6

*Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*,
    948 F.2d 111 (2d Cir. 1991)............................................................................2, 3

*Chechele v. Scheetz*, 819 F. Supp. 2d 342 (S.D.N.Y. 2011),
    *aff'd*, 466 F. App'x 39 (2d Cir. 2012)............................................................3, 5, 6, 7

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*,
    654 F.3d 276 (2d Cir. 2011)............................................................................5, 6, 7

*Donaghue v. Accenture Ltd.*,
    No. 03 Civ. 8329 (NRB), 2004 WL 1823448 (S.D.N.Y. Aug. 16, 2004) ................3

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    --- F. Supp. 2d ---, 2014 WL 1760332 (S.D.N.Y. May 2, 2014)................................... *passim*

*Ferring B.V. v. Allergan, Inc.*,
    --- F. Supp. 2d ----, 2014 WL 988595 (S.D.N.Y. Mar. 13, 2014) ...........................9

*Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73 (2d Cir. 2011) ................................8

*Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115 (2d Cir. 2001) ...........................7

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)............................................................9

*Schaffer v. CC Investments LDC*,
    No. 99 Civ. 2821 (VM), 2002 WL 31869391 (S.D.N.Y. Dec. 20, 2002) ................7

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ............................................................2

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012)..................................................1

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ..........................2

### STATUTES AND RULES

15 U.S.C. § 78m(d)(3) .............................................................................................................1

17 C.F.R. § 240.13d-5(b)(1) ....................................................................................................1

Defendants Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC and Goldman, Sachs & Co. (the "Lead Underwriters") respectfully submit this memorandum of law in opposition to plaintiff's motion for reconsideration of this Court's decision of May 2, 2014, which granted the Lead Underwriters' motion to dismiss the complaint.

## ARGUMENT

Plaintiff's motion fails to identify any proper basis for reconsideration of the Court's May 2 decision dismissing the complaint.  The Court was presented with and considered all relevant facts and law, and reached the correct conclusion based on sound analysis.  Plaintiff's disagreement with that conclusion is not a ground for reconsideration.

In the May 2 decision, this Court held that plaintiff's allegation that each of the Selling Shareholders entered into separate lock-up agreements prior to the Facebook IPO was insufficient, in itself, to establish that the Lead Underwriters had formed a "group" with the Selling Shareholders for the purpose of acquiring, holding, voting or disposing of Facebook stock.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, --- F. Supp. 2d ----, 2014 WL 1760332, at *6 (S.D.N.Y. May 2, 2014) ("Opinion") (citing 15 U.S.C. § 78m(d)(3) and 17 C.F.R. § 240.13d-5(b)(1)).  The Court correctly explained that the Lead Underwriters' alleged "common intent" with the Selling Shareholders to protect the stability of the Facebook stock did not establish coordinated conduct for the purpose of acquiring, holding, voting or disposing of Facebook stock.  *Id.* at *8.

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) (Sweet, J.) (internal quotation marks omitted).  Motions for reconsideration "will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Reconsideration is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). Nor is it a proper forum in which to identify new facts or raise new arguments. *See Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991).

Plaintiff advances no appropriate basis for reconsideration. His memorandum of law fails to demonstrate that the Court overlooked any relevant allegations or authorities. Rather, it impermissibly seeks to reargue the same issues that this Court decided in its May 2 decision. To the extent the motion purports to rely on new factual assertions, those facts appear nowhere in plaintiff's complaint and cannot serve as a basis for reconsideration. Moreover, plaintiff has failed to show any basis for leave to amend, because these new factual assertions provide no support for plaintiff's claim under Section 16(b) of the Securities Exchange Act.

## A.    The Opinion Did Not Overlook Any Allegations as to the Lead Underwriters.

Plaintiff erroneously contends that this Court's May 2 decision "acknowledges" that the alleged commitment by each Selling Shareholder "not to sell or otherwise dispose of" Facebook common stock following the IPO would constitute group action for purposes of Section 13(d). (Pl. Mem. at 1 (citing Opinion at *7).)[1] The Court's decision contains no such statement. To the

---

[1] Citations to "Pl. Mem." refer to the Memorandum of Law in Support of Plaintiff's Motion for Reconsideration or Reargument (Dkt. No. 33).

contrary, the Court expressly stated that lock-up agreements by themselves are insufficient to

establish a Section 16(b) group, following *Chechele v. Scheetz*, 819 F. Supp. 2d 342, 348-49

(S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012), which rejected a claim that shareholders

had formed a Section 16(b) group by entering into separate lock-up agreements.  *See also*

*Donaghue v. Accenture Ltd.*, No. 03 Civ. 8329 (NRB), 2004 WL 1823448, at *1, *3-4 (S.D.N.Y.

Aug. 16, 2004) (rejecting argument that lock-up and voting agreements were sufficient to

establish a group).  Plaintiff attempts to fault the Court's statement that the Lead Underwriters

were "under no reciprocal agreement" not to sell Facebook stock (Pl. Mem. at 1), but that

statement is entirely consistent with plaintiff's complaint, which contains no allegation that the

Lead Underwriters had made any such agreement.  Disregarding the complaint's own affirmative

allegation that the Selling Shareholders "agreed not to sell or otherwise dispose of *any* Common

Stock or securities convertible into or exchangeable into Common Stock for specified periods of

time after the date of the IPO" (Compl. ¶ 15 (emphasis added)), plaintiff now asserts that the

lock-up agreements did not restrict the Selling Shareholders from selling shares purchased in

open market trading after the IPO (Pl. Mem. at 2).  On this premise, the motion argues that the

alleged sales of stock by Goldman Sachs during the restricted period were not inconsistent with

the lock-up terms agreed by the Selling Shareholders.  (*Id.*)  It is plainly inappropriate for

plaintiff to seek reconsideration based on these new arguments, *see Caribbean Trading*, 948 F.2d

at 115, including the new and erroneous assertion that Goldman Sachs was a Selling Shareholder,

which is contradicted by plaintiff's own prior submissions to the Court.[2]  But in any event,

---

[2] Goldman, Sachs & Co. was not a Selling Shareholder.  The Goldman affiliates that sold shares in the IPO were The Goldman Sachs Group, Inc., Goldman Sachs Investment Partners Master Fund, L.P., Goldman Sachs Investment Partners Private Opportunities Holdings, L.P. and FBDC Investors Offshore Holdings, L.P.  (Decl. of Jeffrey S. Abraham in Supp. of Pl. Opp'n to the Lead Underwriters' Mot. to Dismiss (Dkt. No. 18), Ex. 1 at 141 & nn.22-23.)  These four
(....continued)

plaintiff's assertion that the Selling Shareholders were free to sell stock acquired on the secondary market provides no support for his claim that the Lead Underwriters combined with the Selling Shareholders for the purpose of acquiring, holding, voting or disposing of Facebook stock.

Plaintiff argues that the Court mistakenly assumed "that one cannot be both a distributor of stock in an IPO as the Lead Underwriters were, on the one hand, and a seller and holder of stock as the Selling Shareholders were, on the other hand" (Pl. Mem. at 2-3), but the Court's opinion reflects no such assumption.  Rather, the Court correctly rejected plaintiff's contention that the lock-up agreements caused the Lead Underwriters to form a "single unit" with the Selling Shareholders for purposes of Section 16.  Opinion at *7.  Plaintiff's new and unfounded assertion that Goldman Sachs was also a Selling Shareholder casts no doubt on the correctness of that holding and, in any event, as noted above, is both contradicted by plaintiff's own submissions and untrue.

Finally, plaintiff disputes the Court's conclusion that the lock-up agreements "did not confer any combined benefit on the parties, but rather were a standard structural feature that assisted marketability by assuring investors that the Selling Shareholders' remaining holdings would not be immediately sold into the market."  Opinion at *7.  (Pl. Mem. at 3.)  Plaintiff contends that the lock-up agreements were instrumental to the IPO, which benefitted both the Selling Shareholders and the Lead Underwriters, who earned a commission by providing underwriting services in connection with the IPO.  (Pl. Mem. at 3.)  But as the Court properly

---

(continued….)

Selling Shareholders executed lock-up agreements, but Goldman, Sachs & Co. did not.  Nothing in the complaint supports plaintiff's characterization of Goldman, Sachs & Co. as a Selling Shareholder.  Nor could such an allegation be pleaded under Rule 11.

recognized, the Selling Shareholders and Lead Underwriters had separate and distinct objectives and roles in connection with the IPO.  Opinion at *7-8.  The mere fact that they both separately benefited from the IPO does not support an inference that the Selling Shareholders and Lead Underwriters combined for the purpose of acquiring, holding, voting or disposing of Facebook stock.  To conclude otherwise would mean that every underwritten securities offering would give rise to a Section 16(b) group.

### B.   The Opinion Did Not Overlook Any Allegations as to Goldman Sachs.

Plaintiff reprises his incorrect factual assertion that Goldman Sachs was a Selling Shareholder in making the new argument, raised for the first time in his motion for reconsideration, that each of the Selling Shareholders combined to form a Section 16(b) group with one another by entering into their separate lock-up agreements.  (Pl. Mem. at 4.)  He maintains that a presumed "absence" of "divergent interests or treatment" between Goldman Sachs as purported selling shareholder and the other Selling Shareholders "demonstrates" that Goldman Sachs was part of a single group with the other Selling Shareholders for purposes of Section 16(b).  (Pl. Mem. at 4.)  But to plead that a defendant was a member of a Section 16(b) group, a complaint must allege facts giving rise to an inference that the purported members of the group have combined for one of the specific purposes enumerated by the statute and SEC regulations.  A supposed "absence" of "divergent interests" is not sufficient to demonstrate such a combination.  This was the precise holding of *Chechele v. Scheetz*, which explained that an allegation that shareholders who executed separate lock-up arguments were similarly situated was insufficient to plead the existence of a Section 13(d) group.  *See* 819 F. Supp. 2d at 348-49. What is needed, again, are allegations indicating an agreement to act together for one of the enumerated statutory purposes, which are lacking here.  *See CSX Corp. v. Children's Inv. Fund*

*Mgmt. (UK) LLP*, 654 F.3d 276, 284 (2d Cir. 2011) (reversing district court's finding that defendants had formed a group because the court "did not explicitly find a group formed *for the purpose of acquiring* CSX securities" (emphasis added)); Opinion at *7 (citing *CSX Corp.*).

      **C.    The Opinion Contains No Clear Error of Law.**

      Plaintiff's assertion that reconsideration should be granted based on two supposed errors of law is similarly unavailing.  The Court was previously presented with each of the cases that plaintiff cites in his motion and reached the correct result after careful analysis.  *See* Opinion at *7.  Plaintiff simply seeks "a second bite at the apple," which is not a proper basis for reconsideration.  *Analytical Surveys*, 684 F.3d at 52.  In any event, plaintiff's discussion of these cases is misguided, even if the Court were to consider them again.

      Plaintiff asserts that the Court misapplied Second Circuit precedent in citing *Chechele v. Scheetz* as support for the holding that "the existence of a lock-up agreement, 'standing alone,' is insufficient to establish a Section 16(b) group."  Opinion at *7 (citing *Chechele v. Scheetz*, 819 F. Supp. 2d 342 (S.D.N.Y. 2011), *aff'd*, 466 F. App'x 39 (2d Cir. 2012)).  But the Court's decision was entirely consistent with Second Circuit precedent.  As noted above, in *Chechele*, the district court held that allegations that individual shareholders had entered into separate lock-up agreements were insufficient to plead a claim that they had formed a Section 16(b) group absent supporting allegations that they had agreed to act together for the purpose of holding or disposing of the issuer's stock, *see* 819 F. Supp. 2d at 348-49, and that holding was affirmed by the Second Circuit, *see* 466 F. App'x at 41.  This Court's ruling followed those precedents in holding that the plausibility of a group inference in the context of lock-up agreements "'stands and falls with the factual content of the *supporting allegations*,'" which are lacking here. Opinion at *7 (quoting *Chechele*, 819 F. Supp. 2d at 349).

Plaintiff argues that *Chechele* is inapposite because the purported group objective in that case was "an ill-defined desire to 'maintain control of [the company].'" (Pl. Mem. at 5 (quoting *Chechele*, 819 F. Supp. 2d at 346).) He argues that the lock-up agreements at issue here are distinguishable because they "had a discrete and clearly defined objective" (*id.*) "to control the supply of Facebook shares available to the market, which, in turn, was expected to provide support for the trading price of Facebook common stock" (Compl. ¶ 16). But again, as the Court's prior opinion correctly explains, what matters for purposes of Section 16(b) is whether the purported group members combined for one of the enumerated statutory purposes. *See* Opinion at *7 ("[N]owhere does the Complaint plead or allege that the Lead Underwriters combined with the shareholders under the lock-up agreements or otherwise to *acquire, hold or dispose* of securities" (citing *CSX Corp.*, 654 F.3d at 284)). Both *Chechele* and the Second Circuit's decision in *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 126-27 (2d Cir. 2001), make clear that a failure to plead a combination for such a purpose requires dismissal.[3]

Finally, plaintiff asserts that the Court erred insofar as it relied upon lock-up agreements being "standard industry practice" in IPOs. (Pl. Mem. at 5.) Plaintiff advances the new argument that the SEC permits lock-up agreements only "where the underwriters act in good faith." (*Id.*) He cites no support for this novel assertion, which rests on the flawed notion that

---

[3] Plaintiff erroneously argues that *Schaffer v. CC Investments LDC*, No. 99 Civ. 2821 (VM), 2002 WL 31869391, at *8 (S.D.N.Y. Dec. 20, 2002), held that lock-up agreements entered into for purposes of "facilitating [a] sale" of stock are *prima facie* evidence of a Section 16(b) group. (Pl. Mem. at 5.) But in *Schaffer*, as in *Morales v. Quintel Entertainment*, the court based its ruling not only on the lock-up agreements but on "*other evidence of agreement . . .* with which the lock-up provision is considered in toto." 2002 WL 31869391, at *8 n.7. (emphasis added); *see also id.* at *5-9 (citing evidence that shareholders relied upon the same legal counsel, circulated draft agreements among themselves, were viewed by the issuer as a group, consented to modifications to a securities purchase agreement for their joint benefit and registered their securities on the same day).

underwriters in a public offering are *invariably* subject to Section 16(b) liability unless they affirmatively demonstrate that one of the exemptions established under the SEC's rules applies. (*Id.* at 5-6.)  This argument simply ignores the controlling precedents, discussed above, which make plain that a plaintiff is required to allege facts showing a combination for one of the enumerated statutory purposes, and that the mere existence of a lock-up agreement is inadequate to make such a showing.  Plaintiff's assertion that the Court "conferr[ed] an exemption" on the Lead Underwriters (*id.* at 6) is flatly wrong.  Rather, the Court correctly held that plaintiff had failed to allege facts that would establish the existence of a Section 16(b) group in the first instance; having correctly rejected plaintiff's Section 16(b) group theory, the Court never reached the question whether the transaction was otherwise exempt under SEC Rule 16a-7.  *See* Opinion at *8.

### D.     There Is No Basis for Leave to Amend.

Plaintiff asks the Court to reconsider its denial of his request for leave to amend if any of the facts raised in this motion or his opposition to the motion to dismiss "are not explicitly or otherwise properly alleged in the Complaint."  (Pl. Mem. at 7.)  The Court properly denied plaintiff's prior request for leave to amend, which was relegated to a footnote in his brief in opposition to the Lead Underwriters' motion to dismiss and expressly disclaimed any pleading deficiencies.  *See Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76-77 (2d Cir. 2011) (affirming denial of request for leave to amend that appeared "on the final page of [plaintiffs'] brief in opposition to defendants' motion to dismiss, in boilerplate language and without any explanation as to why leave to amend was warranted").

Plaintiff has identified no new facts that would permit his Section 16(b) claim to survive a motion to dismiss.  Any amendment therefore would be futile, and the Court should deny

reconsideration. *See Ferring B.V. v. Allergan, Inc.*, --- F. Supp. 2d ----, 2014 WL 988595, at *1 (S.D.N.Y. Mar. 13, 2014) (Sweet, J.) (denying motion for leave to amend on futility grounds (citing *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008))).

## **CONCLUSION**

The Court should deny plaintiff's motion for reconsideration or reargument.

Dated:   New York, New York
         May 30, 2014

                              DAVIS POLK & WARDWELL LLP

                       By:   /s/ James P. Rouhandeh
                              James P. Rouhandeh
                              Charles S. Duggan
                              Andrew Ditchfield

                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone:   (212) 450-4000
                              Facsimile:   (212) 701-5800

                              *Attorneys for Defendants Morgan Stanley*
                              *& Co. LLC, J.P. Morgan Securities LLC*
                              *and Goldman, Sachs & Co.*